## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

KAREN L. HODGE,                          )
                                     )
    Plaintiff,               )
                                     )
v.                                       )    **Case No. 09-CV-613-PJC**
                                     )
MICHAEL J. ASTRUE, Commissioner of the   )
Social Security Administration,          )
                                     )
    Defendant.               )

## OPINION AND ORDER

Claimant, Karen L. Hodge ("Hodge"),  pursuant to 42 U.S.C. § 405(g), requests judicial

review of the decision of the Commissioner of the Social Security Administration ("Commissioner")

denying her applications for disability benefits under the Social Security Act, 42 U.S.C. §§ 401 *et*

*seq*.  In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before

a United States Magistrate Judge.  Any appeal of this order will be directly to the Tenth Circuit Court

of Appeals.  Hodge appeals the decision of the Administrative Law Judge ("ALJ") and asserts that

the Commissioner erred because the ALJ incorrectly determined that Hodge was not disabled.  For

the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

### Claimant's Background

At the time of the hearing before the ALJ on February 25, 2009, Hodge was 46 years old.

(R. 18, 112).  She had previously worked as a restaurant hostess, as a dry cleaner, and as a security

worker at American Airlines.  (R. 23-27).  She left the security job in November 2006.  (R. 27).

Hodge testified that she became ill at that time and went to see her neurologist, Dr. Edwards, because

she was having trouble walking, she had severe tremors, her speech was impaired, her eyesight was

blurry, her arms and legs were numb, and her pain level had increased.  (R. 28).  Hodge testified that

Dr. Edwards told her that she had multiple sclerosis ("MS") and that she had to quit work.  (R. 28-

29).  Hodge testified that these symptoms had come on gradually over a three-to-four year period

before November 2006, but she had continued to work until that time because she loved her job.  (R.

29).

Hodge testified that at the time of the hearing in February 2009 she would spend about five

days a week lying down during the day due to the severity of her symptoms.  (R. 32).  She estimated

that, due to numbness and pain, she only spent four to six hours a day moving around.  (R. 32-33).

She testified that she walked with a cane and that she often swayed and had difficulty walking in a

straight line.  (R. 33-34).  She said she fell quite a bit, and she had once fallen at home and broken

her arm when she hit a kitchen table.  *Id.*  Hodge said that her severe pain was a "9" on a scale of 1-

10, but her medication would control it to the point of being a "7."  (R. 34).  She had drowsiness and

dizziness often.  (R. 35-36).  She testified that she had developed severe depression since 2006.  (R.

37-38).  She did not think she could do any of her previous jobs or any job at all.  (R. 39).  She could

not do many things she had previously liked to do.  *Id.*  She could not read because it took her longer

and she would have to read something more than once to understand it.  (R. 39-40).

Hodge testified that at the time of the hearing she had discontinued her medications because

she could not afford them.  (R. 41-42).   Hodge said that Dr. Edwards had referred her to a Dr.

Hammond in Kansas for an evaluation, and Dr. Hammond said that Hodge had fibromyalgia rather

than MS.  (R. 43-44).  Hodge did not believe that Dr. Hammond had evaluated her properly.  *Id.*

Hodge had discontinued seeing Dr. Edwards due to her financial situation.  *Id.*

Hodge's daughter testified at the hearing.  (R. 46-49).  She testified that she had noticed

about three years earlier that her mother's speech and ability to walk were slowly becoming impaired. (R. 46). After she quit work in 2006, her mother became more depressed and withdrawn. (R. 47-48).

Records indicate that Hodge was treated at Saint Francis emergency room on December 9, 2005 for shortness of breath. (R. 372-80). She was seen again in February 2006 on multiple occasions for headache and for shortness of breath that was believed to be related to her asthma. (R. 339-71). Hodge was also treated for asthma/wheezing at SouthCrest Hospital in February 2006. (R.195-216, 222-23). A computed tomography ("CT") scan of Hodge's chest done at that time showed old granulomatous changes and minor emphysematous disease, but no sign of pulmonary embolus. (R. 213). A chest x-ray was unremarkable. (R. 215).

Hodge was seen at SouthCrest again on May 25, 2006, complaining of weakness, numbness and dizziness. (237-47). Hodge was seen again on May 30, 2006 with a head injury from a fall at work. (R. 248-54). She was discharged home with a clinical impression of cervical strain. (R. 252). A CT scan of Hodge's cervical spine done at that time was negative for obvious fracture, but noted mild cervical spondylosis. (R. 253). Further diagnostic procedures regarding Hodge's thyroid were recommended, however, due to an enlarged right lobe of her thyroid of uncertain etiology. *Id.* Hodge was seen again on June 28, 2006 for left-sided abdominal pain. (R. 255-67). CT scans of Hodge's abdomen and pelvis showed granuloma areas on Hodge's right lower lung lobe and her spleen, which the reviewing physician believed were likely due to a histoplasmosis infection. (R. 265). There was a nonobstructing 3 mm stone in Hodge's left kidney, and no other significant problems were suggested by the CT scans. *Id.* Hodge was discharged for home. (R. 259).

Hodge was seen again at Saint Francis on September 12, 2006. (R. 321-34). The physician's impression was "facial tingling, possible atypical migraine vs. fibromyalgia." (R. 333). Hodge was discharged to follow up with her physician. *Id.*

Hodge saw Bart Rider, D.O. on several occasions in 2006. (R. 441-54). Dr. Rider referred Hodge for evaluation by Jeanne M. Edwards, M.D. who examined Hodge on October 4, 2006. (R. 461-85). Dr. Edwards took a detailed history of Hodge's symptoms. (R. 461-64). The neurological examination appears to have been normal, with Dr. Edwards specifically stating that strength in all muscle groups tested was good and equal. (R. 465). Sensation was intact, although Dr. Edwards noted that Hodge reported "decreased sensation to pinprick and light touch subjectively in the left hand and arm." *Id.* Dr. Edwards' impression was that Hodge's "unusual symptoms" might be related to "atypical migraines," but Dr. Edwards could not exclude seizures or transient ischemic attacks ("TIA") based on Hodge's history. *Id.* Dr. Edwards recommended further testing. *Id.*

On October 9, 2006, Hodge was seen again at SouthCrest with a chief complaint of left-sided paresthesia[1]. (R. 218-21, 224-25). A report from an MRI of Hodge's brain stated the following impression: "Focal area of white matter disease in the left parietal region. The usual differential considerations are applicable." (R. 224). The narrative of the report also stated that MS was not excluded. *Id.* On October 10, Hodge returned to Dr. Edwards who said that the results of the MRI and other testing raised the "possibility of a demyelinating disease." (R. 460). At another return visit on October 17, 2006, Dr. Edwards said that additional testing showed no abnormality other than the left parietal lesion identified by the MRI. (R. 458). Dr. Edwards went on to state:

---

[1]      Paresthesia is a "[s]ensation of numbness, prickling, or tingling." Taber's Cyclopedic Medical Dictionary 1438 (17th ed. 1993).

> There would not appear to be enough evidence to support this diagnosis [of demyelinating disease].  Her symptoms would also suggest the possibility of a collagen vascular disease.  The amount of pain identified [] appears to be excessive.

*Id.*  Dr. Edwards referred Hodge to the University of Kansas neurology clinic for further evaluation.

*Id.*

On November 22, 2006, Hodge was again seen at Saint Francis emergency with a chief complaint of shortness of breath.  (R. 303-15).

Nancy Hammond, M.D., Assistant Professor at the University of Kansas Medical Center, examined Hodge and made a report to Dr. Edwards dated December 18, 2006.  (R. 382-84).  On examination, Hodge was found to have diminished pinprick sensation throughout, and decreased facial sensation to light touch and vibratory sense as well.  (R. 383).  In other respects, the examination results appear to have been normal.  *Id.*  Dr. Hammond's impression was that Hodge's symptoms were "most likely secondary to fibromyalgia syndrome.  She does not meet any diagnostic criteria for multiple sclerosis at this time and I do not feel that she suffers from a demyelinating process.  Some of her symptoms could also be somatoform in nature."  (R. 383-84).

Hodge was treated at Tulsa Pain Consultants on January 19, 2007.  (R. 385-88).

On March 17, 2007, Dr. Edwards noted that she was still waiting on a report from the University of Kansas "concerning the possibility of multiple sclerosis versus fibromyalgia."  (R. 456).

Hodge saw Jennifer Quay M.D. at the OU Physicians Clinic on August 22, 2007, and Dr. Quay diagnosed major depression.  (R. 496-98).  Dr. Quay began Hodge on Celexa.  *Id.*  Hodge had an appointment with William Yarborough M.D. at the OU Physicians Clinic on September 4, 2007 for what was described as a follow up to an emergency room visit.  (R. 681-83).  The impression was

neck pain.  (R. 683).  Hodge saw Dr. Quay again on October 9, 2007.  (R. 677-680).  Hodge complained of depression, whole body numbness and weakness, slurred speech, ataxic gait, and poor concentration.  (R. 679).  She also complained that she was choking on solid food.  *Id.*  Dr. Quay's impressions were major depression, hypothyroidism not otherwise specified, dysphagia, and muscle weakness.  (R. 680).  Dr. Quay ordered a barium swallow study and other laboratory tests.  *Id.*  At an appointment on December 18, 2007, Hodge reported that, due to weakness in her legs, she had fallen and broken her left arm .  (R. 671-73).  The impressions were muscle weakness and dysphagia, and Hodge was referred to neurology for further evaluation and treatment.  (R. 673).  She was given new prescription medication for her diagnosis of major depression.  *Id.*

Hodge returned on February 1, 2008, requesting medication for anxiety due to stressful family situations.  (R. 666-70).  She was diagnosed with "anxiety state" not otherwise specified, and given prescription medication.  (R. 669-70).  On February 19, 2008, Dr. Quay referred Hodge for a sleep study for her malaise and fatigue symptoms, and ordered a bone scan of her fractured humerus.  (R. 660-65).   Dr. Quay also noted that the neurology department in Oklahoma City was not accepting patients, and that Hodge was going to continue to call to see if she could get an appointment.  (R. 663).  Hodge was seen at the OU Physician's Clinic on November 4, 2008 with a chief complaint of weakness and also with the complaint that she was "walking like she's drunk." (R. 697-701).  Hodge then reported to the physician that she had not been taking her thyroid medication since February, and the physician felt that many of her symptoms were attributable to that.  (R. 700).  The physician again referred Hodge for evaluation by neurology for her ataxia.  (R. 701).  The physician prescribed a new medication for Hodge's major depression.  *Id.*

Hodge was seen at the Saint Francis emergency room on three occasions in February, March, and April 2008 for reaction to hair dye and rash issues. (R. 721-42). Hodge was seen on October 26, 2008 for complaint of left side pain. (R. 711-20). A CT scan shows "[t]wo tiny nonobstructing left renal calculi." (R. 714). The clinical impression was renal stones, and Hodge was discharged with prescription medication and told to follow up with her doctor. (R. 715). Hodge was seen on November 19, 2008 for a complaint of headache. (R. 703-10). A CT scan done at that time showed no significant abnormality. (R. 705).

A Physical Residual Functional Capacity Assessment was completed by agency nonexamining consultant Thurma Fiegel, M.D. on September 25, 2007. (R. 607-14). The Assessment listed the primary diagnosis as fibromyalgia syndrome. (R. 607). For exertional capacity, Dr. Fiegel found that Hodge was capable of light work. (R. 608). In the section for narrative explanation, Dr. Fiegel summarized Hodge's complaints of paresthesia and the MRI that showed the lesion on the parietal lobe. *Id.* She summarized Dr. Hammond's findings that Hodge did not meet diagnostic criteria for MS and probably had fibromyalgia syndrome. *Id.* Dr. Fiegel found no other limitations. (R. 609-14).

Laura Lochner, Ph.D., a nonexamining agency consultant, completed a Psychiatric Review Technique form on September 25, 2007. (R. 615-28). The form stated that the assessment was "current." (R. 615). Dr. Lochner found that Hodge's impairment was not severe. (R. 615). For Listing 12.04, Dr. Lochner noted that Hodge had depressive syndrome. (R. 618). For the "Paragraph B Criteria,"[2] Dr. Lochner assessed Hodge with a mild degree of limitation in her activities of daily

_____

[2]There are broad categories known as the "Paragraph B Criteria" of the Listing of Impairments used to assess the severity of a mental impairment. The four categories are (1) restriction of activities of daily living, (2) difficulties in maintaining social functioning, (3)

living, in her social functioning, and in her concentration, persistence or pace, with no episodes of decompensation.   (R. 625).   In the "Consultant's Notes" portion of the form, Dr. Lochner summarized Hodge's complaints at a recent appointment at the OU Physicians Clinic, but noted that while Hodge was prescribed Celexa, she was not referred for psychological treatment. (R. 627).  Dr. Lochner referred to a function report that indicated that periods of depression were transient.  *Id.*

Nonexamining agency consultant Janice B. Smith, Ph.D. completed two more Psychiatric Review Technique forms dated November 29, 2007. (R. 629-57).  The first form stated that it was an assessment for the period of November 8, 2006, to December 31, 2006, which would have been the period during which the ALJ found that Hodge met insured status requirements.  (R. 11, 644). This form stated that it was based on category 12.04, affective disorders, but that there was a coexisting nonmental impairment that required referral to another medical specialty and that there was insufficient evidence.  (R. 644, 647, 654).  Dr. Smith stated in the Consultant's Notes portion of the form that there was no medical evidence dated before December 31, 2006 showing a complaint of a diagnosis of depression.  (R. 656).  She noted that the first diagnosis was at the August 22, 2007 appointment with Dr. Quay, which was a general physical examination.  *Id.*  Dr. Smith therefore concluded that there was insufficient evidence to rate Hodge's mental status from the period of her alleged onset of November 8, 2006 to her date last insured, December 31, 2006. *Id.*

---

difficulties in maintaining concentration, persistence or pace, and (4) repeated episodes of decompensation, each of extended duration.  Social Security Ruling ("SSR") 96-8p; 20 C.F.R. Part 404 Subpt P, App. 1 ("Listings") § 12.00C.  *See also Carpenter v. Astrue*, 537 F.3d 1264, 1268-69 (10th Cir. 2008).

The second form completed by Dr. Smith stated that it was an assessment from December 13, 2006 to "present," being the November 29, 2007 date of the form.  (R. 629).  Dr. Smith again stated that the assessment was based on category 12.04, affective disorders, and that there was a coexisting nonmental impairment that required referral to another medical specialty.  *Id.*  Dr. Smith noted the evidence of depressive syndrome.  (R. 632).  For the Paragraph B Limitations, she found no limitations of any of Hodge's functioning.  (R. 639).  In the Consultant's Notes portion of the form, Dr. Smith noted an absence of evidence of treatment for depression.  (R. 641).  She summarized Hodge's activities of daily living.  *Id.*

On November 17, 2006, Dr. Edwards wrote a "To Whom It May Concern" letter stating that Hodge "needs to be off work indefinitely because of a medical condition."  (R. 759).

Hodge was evaluated by Dominic Losacco, M.D. on January 29, 2009, apparently at the request of her attorneys .  (R. 743-58).   The first two pages of Dr. Losacco's report appear to be a recounting of Hodge's history of her illness, including her feelings of depression and anxiety.  (R. 743-44).  The report then stated that Hodge's "mental status exam is consistent with this."  (R. 745).  Dr. Losacco described Hodge's mood as depressed and stated that there was tearfulness.  *Id.*  He said Hodge's sensorium was clear and that Hodge had good insight.  *Id.*  Dr. Losacco then proceeded to state that "[d]iagnostically, Ms. Hodge is suffering from a major affective disorder."  *Id.*  He said that it was quite common to see a major mood disorder with a history of MS.  *Id.*  He believed that Hodge's care for her depression had been "minimal," and he recommended further treatment at OU Physicians Clinic.  He ended his report with the statement that "[p]resently, clearly Ms. Hodge is suffering from two major disorders, multiple sclerosis, as well as a major affective disorder[, e]ither of which is incapacitating and would render her disabled at this time."  *Id.*  Dr. Losacco also

9

completed forms describing Hodge's functional limitations.  (R. 746-58).   For the Paragraph B criteria, Dr. Losacco found that Hodge was markedly limited in her activities of daily living, extremely limited in maintaining social functioning, and constantly had difficulties with concentration, persistence or pace.  (R. 758).   Out of 20 specific functional abilities, Dr. Losacco checked boxes that Hodge was severely limited in 11 categories, markedly limited in 6 categories, and moderately limited in 3 categories.  (R. 746-48).

### Procedural History

Hodge protectively filed an application on December 13, 2006 seeking disability insurance benefits under Title II, 42 U.S.C. §§ 401 *et seq.*, alleging disability beginning November 8, 2006. (R. 112-14). According to the ALJ's decision, Hodge also filed an application seeking supplemental security income under Title XVI, 42 U.S.C. §§ 401 *et seq*.  (R. 9). The applications were denied initially and on reconsideration.  (R. 61-69, 74-79).  A hearing before ALJ Deborah Rose was held February 25, 2009 in Tulsa, Oklahoma.  (R. 18-55).  By decision dated April 1, 2009, the ALJ found that Hodge was not disabled at any time through the date of the decision.  (R. 9-17).  On July 17, 2009, the Appeals Council denied review of the ALJ's findings.  (R. 1-4).  Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. § 404.981, § 416.1481.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A).   A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 404.1520.[3]  *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's

---

[3]Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

**Decision of the Administrative Law Judge**

The ALJ found that Hodge met insured status requirements through December 31, 2006. (R. 11). At Step One, the ALJ found that Hodge had not engaged in any substantial gainful activity since her alleged onset date of November 8, 2006. *Id.* At Step Two, the ALJ found that Hodge had severe impairments of ataxia, fibromyalgia, and depression. *Id.* At Step Three, the ALJ found that Hodge's impairments did not meet a Listing. *Id.*

The ALJ determined that Hodge had the RFC to do sedentary work with normal breaks and with "only occasional interaction with the public." (R. 13). At Step Four, the ALJ found that Hodge could not perform her past relevant work. (R. 15). At Step Five, the ALJ found that there were jobs that Hodge could perform, taking into account her age, education, work experience, and RFC. (R. 15-16). Therefore, the ALJ found that Hodge was not disabled from November 8, 2006 through the date of the decision. (R. 17).

**Review**

Hodge argues that the ALJ failed to properly consider her mental limitations. The undersigned finds that substantial evidence supports the ALJ's decision, and the decision complies with legal requirements. Therefore, the ALJ's decision is affirmed.

Hodge argues that the ALJ did not give adequate reasons for rejecting the opinion evidence of Dr. Losacco. First, Hodge appears to agree that Dr. Losacco's opinion is that of an examining

physician, rather than a treating physician.  Regarding opinion evidence, generally the opinion of a treating physician is given more weight than that of an examining consultant, and the opinion of a nonexamining consultant is given the least weight.  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).   A treating physician opinion must be given controlling weight if it is supported by "medically acceptable clinical and laboratory diagnostic techniques," and it is not inconsistent with other substantial evidence in the record.  *Hamlin*, 365 F.3d at 1215.   *See also* 20 C.F.R. § 404.1527(d)(2).  Even if the opinion of a treating physician is not entitled to controlling weight, it is still entitled to deference and must be weighed using the appropriate factors set out in Section 404.1527.  *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

Because the opinion evidence of Dr. Losacco was not treating physician opinion evidence, the ALJ did not have to comply with the requirements stated above.  Instead, the requirement was that the ALJ must consider the opinion evidence and must provide specific legitimate reasons for rejecting it. *Victory v. Barnhart*, 121 Fed. Appx. 819, 825 (10th Cir. 2005) (unpublished) *citing Doyal v. Barnhart*, 331 F.3d 758, 763-64 (10th Cir. 2003).

Here, the ALJ clearly considered the evidence of Dr. Losacco.  She accurately summarized his statement that Hodge was incapacitated due to her MS and her major depressive disorder.  (R. 15).  The ALJ then went on to state that she gave Dr. Losacco's opinion no weight because he relied on Hodge's accurate rendition of her symptoms, and Hodge told Dr. Losacco that she had MS when there was no medical evidence that she had MS.  *Id.*  Therefore the ALJ found that Dr. Losacco's report should be given no weight because it was based on an invalid premise.  *Id.*

Hodge essentially argues that even if the underlying facts are conceded as true that Hodge did not have MS, Dr. Losacco's report should still be considered valid as to his opinion regarding

Hodge's affective disorder.  The ALJ, however, obviously did not think that Dr. Losacco's opinion regarding Hodge's depression could be separated from his belief that Hodge had MS, and the language of Dr. Losacco's report supports the ALJ's position.  Dr. Losacco explicitly coupled together the two diagnoses in his report, saying that it was quite common to see depression with MS and that such a history was "quite expected."  (R. 745).  Thus, the ALJ's reason for rejecting Dr. Losacco's report was a specific and legitimate one.  Hodge complains that the ALJ did not discuss the forms that Dr. Losacco completed giving his opinions of Hodge's functional capacity.  Given the ALJ's reason for rejecting the opinion evidence of Dr. Losacco, based on the fundamental coupling of Dr. Losacco's diagnoses of MS and affective disorder, it is understandable that the ALJ did not recount these portions of Dr. Losacco's report in detail, and such a recounting was not required.  The ALJ's consideration of Dr. Losacco's opinion evidence was adequate.

While Hodge's argument centers on the opinion evidence of Dr. Losacco, she mentions at times that the ALJ ignored Hodge's treatment at the OU Physician's Clinic for depression.  If this is intended as an argument supporting reversal, it is not a developed argument that this Court can review in a meaningful way.  *See Wall v. Astrue*, 361 F.3d 1048, 1066 (10th Cir. 2009) (perfunctory presentation of argument by claimant deprived the district court of the opportunity to analyze and rule on issue); *Zumwalt v. Astrue*, 220 Fed. Appx. 770,  776-77 (10th Cir. 2007) (unpublished) (waiver rules apply in Social Security disability context when issues are not sufficiently preserved).

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal

standards were applied.   The decision is **AFFIRMED**.

Dated this 3rd day of December, 2010.

Paul J. Cleary
United States Magistrate Judge